The PEOPLE of the State of Colorado,
Plaintiff–Appellee,

v.

Gilbert A. SHACKELFORD,
Defendant–Appellant.

No. 90CA0185.

Colorado Court of Appeals,
Div. V.

Oct. 22, 1992.

Rehearing Denied Nov. 27, 1992.

Certiorari Denied April 26, 1993.

Norman S. Early, Jr., Dist. Atty., Martin F. Egelhoff, Deputy Dist. Atty., Denver, for plaintiff-appellee.

David F. Vela, State Public Defender, Andrew C. Heher, Deputy State Public Defender, Denver, for defendant-appellant.

Opinion by Judge RULAND.

Defendant, Gilbert A. Shackelford, appeals from a judgment of conviction entered upon a jury verdict finding him guilty of felony menacing. He also appeals the life sentence imposed pursuant to the habitual criminal statute, § 16–13–101, C.R.S. (1986 Repl.Vol. 8A). We affirm.

On June 8, 1989, while involved in an argument with his girlfriend at her residence, defendant became violent. He threatened to kill her and swung a baseball bat, later a stove poker, and eventually his fists at her. There is evidence indicating that the victim suffered a burn on her hand from the incident and that, during the incident, defendant broke various items in the residence and also made threats against the victim's daughter and her grandmother.

Eventually, the victim escaped from the house, and defendant was subsequently arrested and charged with violating certain Denver city ordinances. These charges were later dismissed by the city attorney.

On July 17, charges were refiled against defendant in Denver County Court for third degree assault, a class 1 misdemeanor. Three days later, the prosecution added a charge of felony menacing to the misdemeanor charge.

At the preliminary hearing, the district attorney dismissed the misdemeanor charge. The court, however, found probable cause to establish felony menacing, and the case was bound over to the district court.

On October 10, the prosecution filed a motion to add habitual criminal charges. The court granted the motion, and the prosecution filed five counts.

In November, defendant filed a motion to dismiss the habitual criminal counts and to prohibit the use of the prior felony convictions at trial. Defendant also moved to dismiss all charges on grounds that prosecutorial misconduct had denied him due process of law.

Hearings were held on the validity of the prior felony convictions, and the trial court concluded that four of the five convictions were constitutionally sound and were, therefore, admissible in the habitual criminal prosecution. Following a hearing on defendant's motion to dismiss, the motion was denied.

At trial, a jury found defendant guilty of felony menacing. It also found him guilty of being an habitual criminal, premised on his previously being convicted of: (1) second degree kidnapping, rape, and aggravated robbery; (2) robbery; (3) breaking and entering a motor vehicle; and (4) larceny from the person. Defendant was thereafter sentenced under the habitual criminal statute to life in prison, with parole eligibility after 40 years. See § 17–22.5–104(2)(c), C.R.S. (1986 Repl.Vol. 8A).

Defendant filed a post-trial motion for proportionality review of his sentence, and this motion was denied.

I

First, defendant contends that the procedure followed by the prosecution, namely, filing charges in municipal court, then in county court, and finally in district court, denied him fundamental fairness and due process of law. We find no merit in this contention.

Whether an individual's right to due process and fundamental fairness have been violated by prosecutorial misconduct to an extent warranting dismissal depends on the circumstances of each case. *People v. McClure*, 756 P.2d 1008 (Colo.1988); *see also People v. Orr*, 39 Colo.App. 289, 566 P.2d 1361 (1977).

In determining whether there has been a violation, a court must consider certain key factors, including: (1) whether defense witnesses have become unavailable by reason of the delay; (2) whether the delay was purposeful and intended to prejudice the defendant; (3) what kind and the amount of evidence that is available to prove the prosecution's case; and (4) whether justice

dictates that the case be dismissed. *People ex rel. Coca v. District Court,* 187 Colo. 280, 530 P.2d 958 (1975).

█ Here, we conclude that defendant has not established any violation of his rights to fundamental fairness and due process of law. The record fails to establish that the delay impaired his ability to defend against the charges in any manner. Also, the record does not reveal any purposeful delay on the part of the prosecutor. Moreover, only four months passed from the time defendant was initially charged to the time habitual criminal charges were added. Under these circumstances, we conclude that the trial court's ruling was correct.

## II

█ Next, defendant contends that the trial court erred in allowing three of his four prior felony convictions to support his life sentence pursuant to the habitual criminal statute. Specifically, he alleges that in Denver District Court Case Nos. 47307, 52514, and CR1007, the convictions were constitutionally invalid and were, therefore, inadmissible.

Following submission of briefs addressing the merits of defendant's contentions, this court, on its own motion, raised the issue of whether defendant's attack on his prior convictions in the trial court was untimely under § 16–5–402, C.R.S. (1986 Repl. Vol. 8A) and the five-year grace period established in *People v. Fagerholm,* 768 P.2d 689 (Colo.1989). Supplemental briefs were requested to determine whether a timely attack on the convictions was a subject matter jurisdictional prerequisite to judicial review of defendant's contentions. On review of this issue, we conclude that the failure to attack the convictions in a timely manner does not implicate the jurisdiction of this court to resolve defendant's contentions.

Section 16–5–402 was initially adopted by the General Assembly in 1981. Colo.Sess. Laws 1981, ch. 190 at 926. Exceptions to the time bar were added in 1981 and 1984. *See* Colo.Sess.Laws 1984, ch. 117 at 486. These exceptions include cases in which, for example, defendant is adjudicated to be incompetent during the limitation period, committed to an institution for treatment of the mentally ill during that period, or other cases in which the court finds that defendant's failure to attack the convictions results from justifiable excuse or excusable neglect. *See* § 16–5–402(2)(c) and (d), C.R.S. (1986 Repl.Vol. 8A). If, as here, the prosecution fails to assert the time bar in the trial court, and the statutory limitation periods were interpreted to be jurisdictional, then defendant would be denied an opportunity to establish that his attack is authorized under one of the exceptions.

For this reason, we conclude that the expiration of the limitation period contained in § 16–5–402(1) was not intended by the General Assembly to divest the trial court of subject matter jurisdiction to consider defendant's contentions. *See Moland v. People,* 757 P.2d 137 (Colo.1988) (fn. 5). Instead, the prosecution must assert the time bar in the trial court. *Cf. People v. Billips,* 652 P.2d 1060 (fn. 7) (Colo.1982). Hence, we proceed to address defendant's contentions relative to his convictions.

## A

█ Defendant first argues that in Denver District Court No. 47307 in 1960, his guilty plea to larceny from the person was involuntary. Specifically, defendant alleges that he was not represented by counsel and that he was not properly advised by the trial court either of his right to counsel or of the elements of the offense. We perceive no deficiency in the 1960 proceeding.

In 1960, the standards for conducting a providency hearing when accepting a guilty plea were contained in C.R.S.1953, 39–7–8. That statute required only that the accused be advised of the consequences of his plea and the crime with which he was charged. *See People v. Arnold,* 190 Colo. 193, 544 P.2d 968 (1976).

Here, the transcript of the 1960 providency hearing reflects that defendant advised the court that he would not need an attorney because he was going to change his plea from not guilty to guilty. While de-

fendant indicated that he was not going to represent himself, this response, in the context of his other responses, indicates only that he did not wish to persist in his prior not guilty plea.

The court then advised defendant that he had a right to a court-appointed attorney if he did not have the funds to hire one. Moreover, the trial court advised defendant of the crime with which he was charged, the possible penalties if convicted, and his right to be tried by a jury. After this advisement, defendant again indicated that he wished to plead guilty. Under these circumstances, we conclude that defendant's guilty plea was entered voluntarily and knowingly. *See People v. Cisneros,* 824 P.2d 16 (Colo.App.1991).

### B

Defendant also challenges his conviction for second degree kidnapping, rape, and aggravated robbery in Denver District Court Case No. CR1007, asserting that his attorney furnished ineffective assistance of counsel in two respects. First, in view of this court's affirmance of his conviction in a 2–to–1 decision, he contends that counsel was deficient in failing to seek certiorari review. *See People v. Shackelford,* 37 Colo.App. 317, 546 P.2d 964 (1976). In the alternative, defendant contends that his attorney failed to conduct a thorough investigation of the facts prior to trial as evidenced by his failure to locate two potential witnesses. We find no merit in either contention.

■ In order to demonstrate ineffective assistance of counsel in the appellate process, a defendant must first establish that he was prejudiced by failure to seek certiorari review. *See People v. Valdez,* 789 P.2d 406 (Colo.1990). We perceive no such prejudice here.

■ The *Shackelford* dissent was premised on the asserted impropriety of the trial court having directed the defendant during the course of trial to repeat certain words in order for the victim to make an identification based upon the defendant's voice. *See People v. Shackelford, supra* (Judge

Berman dissenting). However, in our view, the majority opinion was correct. *See People v. Thatcher,* 638 P.2d 760 (Colo.1981) (court can require defendant to speak in the courtroom to aid in voice identification). Thus, defendant has failed to demonstrate any prejudice by reason of counsel's failure to seek certiorari review.

■ Defendant has likewise failed to demonstrate prejudice based upon the alleged failure of trial counsel to investigate his alibi defense. Defendant conceded in his testimony that he was advised by counsel that efforts had been made unsuccessfully to locate one of the alibi witnesses. Conversely, there is no basis in the record for us to conclude that the other witness, a taxi cab driver, would either remember defendant or establish that defendant could not have been at the crime scene.

### C

■ Defendant next challenges his conviction for breaking and entering a motor vehicle in Denver District Court Case No. 52514 asserting that he was deprived of his constitutional right to appeal. Again, we agree with the trial court's ruling.

Trial counsel, in the breaking and entering case, conceded that defendant's request to the trial court for appointment of counsel to perfect an appeal was not made until the time for appeal had expired. But, there is no evidence either that defendant was deceived relative to his right of appeal or that his former attorney had expressly agreed to seek appellate review. *See Haines v. People,* 169 Colo. 136, 454 P.2d 595 (1969).

Also, the only evidence offered to establish that meritorious grounds existed for appellate review consisted of an unverified motion for new trial containing conclusionary allegations challenging the sufficiency of the prosecution's evidence as well as a legal contention that certain exhibits introduced in evidence were immaterial. In our view, such new trial motion, standing alone, was legally insufficient to establish that meritorious grounds may have existed for appellate review of the conviction. *Cf.*

*Stroup v. People*, 656 P.2d 680 (Colo.1982) (record demonstrated how improper introduction in evidence of an exhibit prejudiced defendant).

Hence, we conclude that defendant has failed to sustain his burden for challenging the conviction. *See People v. Valdez, supra.*

### III

Last, defendant argues that the trial court erred when it refused to conduct a proportionality review of his life sentence imposed under the habitual criminal statute. We perceive no reversible error.

■■■■ Our supreme court has recently determined that a proportionality review of a life sentence imposed under the Colorado habitual criminal statute is required by the cruel and unusual punishment clauses of the United States and Colorado Constitutions. *People v. Gaskins*, 825 P.2d 30 (Colo.1992). Only an abbreviated review is necessary by an appellate court, however, when the crimes supporting an habitual criminal sentence include grave or serious offenses and when the defendant will become eligible for parole, even though not for forty years. *Alvarez v. People*, 797 P.2d 37 (Colo.1990).

■■■ Here, with the exception of the conviction for breaking into a motor vehicle, all of the habitual counts involved violence or the potential for violence and injury or death. The record also reflects that defendant's parole on at least two occasions was revoked based upon the commission of other crimes. Given the grave and serious nature of the offenses involved, the fact that defendant is eligible for parole, albeit in 40 years, and the record as a whole, we conclude that an abbreviated proportionality review is required here. *See People v. Gaskins, supra.*

■■■ An abbreviated review "consists of a scrutiny of the offenses in question to determine whether in combination they are so lacking in gravity or seriousness as to suggest that a life sentence is constitutionally disproportionate to the crime, taking into account the defendant's eligibility for parole." *People v. Gaskins, supra.*

■■■ Upon performing such review here, we conclude that the trial court did not err in imposing a life sentence. Specifically, the pre-sentence report reflects a history of criminal activity which commenced when defendant, 48 years old at sentencing, was a juvenile and which continued almost unabated until the date of the present offense, except for those years during which defendant was institutionalized.

■■■ Defendant implicitly contends, however, that because of his age and the 40–year interval before parole may be awarded, he will likely never be eligible for parole consideration. He therefore contends that an extended proportionality review is required, notwithstanding the gravity and seriousness of his criminal record. We disagree.

We recognize that a panel of this court in *People v. Cisneros, supra* (*cert. granted*, January 27, 1992) determined that an extended proportionality review was required when it appeared that, because of defendant's age, his chance of parole was unrealistic in light of his life expectancy under the Colorado mortality tables set out in § 13–25–103, C.R.S. (1987 Repl.Vol. 6A). However, the defendant in that case was 60 years of age and was adjudicated as an habitual criminal based upon nonviolent offenses consisting of receipt of stolen property and burglary. Further, the *Cisneros* court specifically predicated its analysis upon the holding of *Solem v. Helm*, 463 U.S. 277, 103 S.Ct. 3001, 77 L.Ed.2d 637 (1983), and the fact that burglary convictions do not preclude proportionality review.

Here, however, as noted, defendant's criminal record includes the commission of grave and serious offenses involving violence and the threat of injury or death to others. To apply the *Cisneros* analysis under these circumstances would afford preferential treatment to a violent offender based strictly upon his or her age and not upon the gravity of the offenses committed. Accordingly, we conclude that an ex-

tended proportionality review is unwarranted.

The judgment and sentence are affirmed.

NEY and VAN CISE *, JJ., concur.